UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X   Case No.
CHRISTINE DEVITA-CAPRIO,

|  |  |
|---|---|
| Plaintiff, | **COMPLAINT** |
| -against- | **PLAINTIFF DEMAND A TRIAL BY JURY** |

ST MANAGEMENT GROUP, INC. d/b/a FRESH & CO.,
PETER BOYIAKIS, *Individually,* and ALEX PEREZ,
*Individually,*

Defendants.

------------------------------------------------------------------------X

Plaintiff CHRISTINE DEVITA-CAPRIO ("Plaintiff") by her attorneys, PHILLIPS &

ASSOCIATES, PLLC, Attorneys at Law, hereby complain of the Defendants, upon information

and belief, as follows:

## NATURE OF THE CASE

1.    Plaintiff complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42

U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991,

Pub. L. No. 102-166 ("Title VII"); the New York State Human Rights Law, New York State

Executive Law § 296 *et. seq.* ("NYSHRL"); and the New York City Human Rights Law,

New York City Administrative Code §8-502(a), *et. seq.* ("NYCHRL"), and seek damages

to redress the injuries Plaintiff has suffered as a result of being discriminated, retaliated

against and terminated on the basis of her Gender.

## JURISDICTION AND VENUE

2.    Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3), and 28 U.S.C. §§1331

and 1343.

3.   The Court has supplemental jurisdiction over the claims of Plaintiff brought under state and city law pursuant to 28 U.S.C. §1367.

4.   Venue is proper in the Southern District of New York pursuant to 28 U.S.C. §1391(b), as the acts complained of occurred therein.

## PROCEDURAL PREREQUISITES

5.   Plaintiff filed charges of discrimination upon which this Complaint is based with the Equal Employment Opportunities Commission ("EEOC").

6.   Plaintiff received a Notice of Right to Sue from the EEOC, dated April 8, 2016, with respect to the herein charges of discrimination.  A copy of the Notice is annexed hereto.

7.   This Action is being commenced within ninety (90) days of receipt of said Notice of Right to Sue.

## PARTIES

8.   That at all times relevant hereto, Plaintiff was and is a resident of the State of New York and the County of Suffolk.

9.   That at all times relevant hereto, Defendant ST MANAGEMENT GROUP, INC. ("ST MANAGEMENT") is a domestic business corporation organized and existing as such under and by the virtue of the laws of the State of New York with its principal place of business located at 22 E. 41st Street, Suite 401, New York, NY 10017.

10.   Upon information and belief, Fresh & Co. is a registered trademark wholly owned and operated by Defendant ST MANAGEMENT.   Fresh & Co. is a restaurant service, providing food and beverages for consumption on and off the premises at various locations throughout New York.

11.   That at all times relevant hereto, Defendant PETER BOYIAKIS ("BOYIAKIS ") is the

2

"Senior Operations Manager" of Defendant ST MANAGEMENT.

12. That at all times relevant hereto, Defendant BOYIAKIS was Plaintiff's supervisor and had supervisory authority over Plaintiff. Defendant BOYIAKIS had the authority to hire, fire or affect the terms and conditions of Plaintiff's employment.

13. That at all times relevant hereto, Defendant ALEX PEREZ ("PEREZ ") is the "Chief Operating Officer" of Defendant ST MANAGEMENT.

14. That at all times relevant hereto, Defendant PEREZ was Plaintiff's supervisor and had supervisory authority over Plaintiff. Defendant PEREZ had the authority to hire, fire or affect the terms and conditions of Plaintiff's employment.

15. That at all times relevant hereto, Defendant ST MANAGEMENT, Defendant BOYIAKIS, and Defendant PEREZ are collectively referred to herein as "Defendants."

## MATERIAL FACTS

16. On or about June 24, 2014, Defendants hired Plaintiff as a "Multi-unit Manager," which is a type of "Operations Manager," earning approximately $85,000 per year.   Upon information and belief, Plaintiff DEVITA-CAPRIO was the lowest paid "Operations Manager" employed by Defendants.

17. As a "Multi-unit Manager," Plaintiff DEVITA-CAPRIO's job responsibilities included, but were not limited to: overall operations support; P&L and Budgets; upholding SOP's; training  development; and hiring and on-boarding of new employees and managers at many of Defendant ST MANAGEMENT's locations in Manhattan.

18. From the outset of her employment, Plaintiff was subjected to discrimination, and very quickly became aware of the differential treatment of female employees of Defendant ST MANAGEMENT.

3

19.    For instance, in or around June 2014, while working at Defendant ST MANAGEMENT's
       425 Park Avenue South, Fresh & Co. location, Daniela Ramaj, who was a training "General
       Manager," indicated to Plaintiff on several occasions that it was "a shock" that Defendants
       hired a female as an "Operations Supervisor," referring to Plaintiff. At that time, Plaintiff
       did not yet understand why Ms. Ramaj was so surprised that Plaintiff was hired in a
       supervisory role. However, Plaintiff DEVITA-CAPRIO soon found out why Ms. Ramaj
       was "shocked" at Plaintiff's hire.

20.    Specifically, in or around August or September 2014, Defendant BOYIAKIS advised
       Plaintiff that she would be scheduled to work the Sunday shift so "the guys" could have
       the day off to watch football. Defendants never offered to give Plaintiff DEVITA-CAPRIO
       Sundays off, and always denied her requests to have Sundays off, which she requested at
       least once a month. Moreover, Plaintiff DEVITA-CAPRIO was not allowed to work from
       home when she was scheduled to work a Sunday.

21.    However, whenever Defendant BOYIAKIS worked the occasional Sunday, he was allowed
       to work from home. Additionally, Defendants always granted Larry Bloom, another
       "Operations Manager's requests to have Sundays off.

22.    Clearly, Defendants gave male employees preferential treatment in scheduling work shifts.
       It became clear to Plaintiff that Defendants discriminated against females and that she
       would not be treated the same way or provided the same employment opportunities as her
       male counterparts.

23.    In or around the same time, Pinar Sari, "Shift Supervisor/Cashier," and Ocean Sari,
       "General Manager," approached Plaintiff to tell her they were happy that there was a
       woman in Plaintiff's position. They also told Plaintiff that Plaintiff was the first female to
       hold her position.

24.   Similarly, Lixza Corea, an "Assistant Manager" at the 60th Street and Lexington Avenue, Fresh & Co. location, congratulated Plaintiff on being the first women "Operations Manager" for Defendants. Ms. Corea also warned Plaintiff to "watch her back" because it will be a "bumpy road." Plaintiff understood this warning to mean that Defendants treated female employees worse, and made their working conditions and environment more difficult than for the male employees.

25.   In or around August or September 2014, Plaintiff DEVITA-CAPRIO felt it was necessary to terminate Stavros Kaltsios, a "General Manager" at the 50th street and 7th Avenue, Fresh & Co. location because he didn't show up for shifts, he had excessive absences, he had drug and alcohol problem, he had random outbursts, and was non-productive at work, sometimes failing to show up for days at a time. However, Plaintiff was told by George Tenedios, the "Chief Executing Officer," that she could not terminate Mr. Kaltsios, and that she had to "deal" with him.

26.   Upon information and belief, Defendants terminated any employee that a male "Operations Manager" wanted terminated.

27.   Plaintiff was also told by Mr. Kaltsios himself that he would not listen to Plaintiff because she was a woman, and he insisted that Mr. Tenedios and Defendant BOYIAKIS were his bosses, not Plaintiff. Whereas Plaintiff was Mr. Kaltsios' supervisor, this was simply not true.

28.   Moreover, Mr. Kaltsios was later suspended for taking money from the safe of Fresh & Co.'s 85th Street and Lexington Avenue location and failing to show up to work, and was then welcomed back and transferred to the 41st Street and Madison Avenue location. Upon information and belief, any female employee who stole money or failed to show up to work was terminated.

29.   For example, Lixza Corea left money out of the safe and was fired by John Koumpourlis on the spot.

30.   Before Lixza was fired, Lixza had spoken to Plaintiff about how she was treated differently from the male managers by Mr. Koumpourlis. Specifically, Mr. Koumpourlis would not listen to any of Lixza's input, and called her "ghetto." Additionally, when Plaintiff DEVITA-CAPRIO had advised Mr. Koumpourlis that Lixza should be promoted to "General Manager" due to her capabilities, he flatly said, "no." Defendant PEREZ had the same response, reasoning that Defendants needed a male "General Manager" at that location.

31.   Moreover, after Plaintiff began pushing for Lixza's promotion to "General Manager," Mr. Koumpourlis and Defendant PEREZ started to complain about Lixza's alleged poor performance, and urged Plaintiff to do the same. However, Plaintiff DEVITA-CAPRIO refused to complain about, or discipline, Lixza when she did not do anything wrong. Plaintiff understood Mr. Koumpourlis and Defendant PEREZ's behavior to be due to the fact that they did not want to promote a female to "General Manager," so they were looking for ways to make it appear as if Lixza was incapable.

32.   Valentino, another male manager at Fresh & Co's 56th Street & Lexington Avenue location, stole $4,000.00 from the safe to pay his personal bills. The General Manger at that location reported the theft to Plaintiff. When Plaintiff brought the issue to Defendant PEREZ and Mr. Koumpourlis, the men told Plaintiff to "keep her mouth shut," that they would not terminate Valentino's employment, and that Plaintiff should treat Valentino the same way as everyone else.

33.   Beginning in or around September 2014 through April 2015, Plaintiff began to complain to Lisa Grant, a Human Resources Representative, that she was being treated differently

because she was a woman.  In response, Ms. Grant would tell Plaintiff DEVITA-CAPRIO that she was hired by Defendants "for diversity reasons."  Ms. Grant would also tell Plaintiff that "the boys" [referring to the male managers and male management] did not like when Plaintiff "questioned anything," and Plaintiff should "keep her mouth shut."

34.     Ms. Grant also informed Plaintiff DEVITA-CAPRIO that she was the lowest paid "Operations Manager" working for Defendants. Additionally, Ms. Grant told Plaintiff that she would "never move up" in the company because she was a female and then said, "Why do you think his [George Tenedios'] sister isn't involved [in the company]?"

35.     Mr. Bloom confirmed everything that Ms. Grant stated to Plaintiff, via several conversations Plaintiff had with Mr. Bloom, particularly about Plaintiff "keeping her mouth shut."

36.     Further, Spiro Sfaelos, a "General Manager" at the 45 West 57th Street Fresh & Co. location, refused to take direction from Plaintiff DEVITA-CAPRIO.  Plaintiff understood this to be as a result of the fact that she was a female.  When Plaintiff later confronted Mr. Sfaelos about his insubordination, Mr. Sfaelos confirmed that Defendant BOYIAKIS had told Mr. Sfaelos that Defendant BOYIAKIS was the one Mr. Sfaelos answered to, not Plaintiff.  Plaintiff again understood Defendant's instruction to Mr. Sfaelos to be one more way to treat Plaintiff differently and discriminate against her due to her gender.

37.     As such, Plaintiff DEVITA-CAPRIO complained to Defendant PEREZ about Mr. Sfaelos' insubordination and his failure to take direction from Plaintiff because she is a woman. Defendant PEREZ told Plaintiff that "it was a Greek macho ego thing" and that he would "take care of it."  Nonetheless, Defendants failed to remedy the situation.

38.     When Plaintiff DEVITA-CAPRIO met with George Buono, Defendants' "President," she expressed her concern that Defendant BOYIAKIS made financial decisions that would

impact Plaintiff's bonus and budgeting for a particular location without including Plaintiff in the decision-making process. Specifically, Plaintiff complained that Defendant BOYIAKIS was managing Plaintiff's group behind her back and giving her a hard time, yet did not act the same way with any other "Operations Manager." Plaintiff then stated to Mr. Buono that Defendant was treating her differently because she was a female.

39. In response, Mr. Buono replied that Defendant BOYIAKIS had been with Defendants for a long time, and it was an "ego issue" with Defendant BOYIAKIS, and Plaintiff would just have to "get used it."

40. Defendant BOYIAKIS later confronted Plaintiff DEVITA-CAPRIO about her conversation with Mr. Buono, which was supposed to be confidential. Defendant BOYIAKIS yelled at Plaintiff and told her she needed to "develop tough skin" if she wanted to stay in the company. Plaintiff understood this to mean that Defendant BOYIAKIS considered her weak and incompetent because she was a female.

41. In or around the Fall of 2014, Plaintiff's relationship with Defendants continued to deteriorate.

42. Specifically, Plaintiff's "Assistant Managers" and hourly staff in all locations she managed began to notify her that Defendant BOYIAKIS was managing Plaintiff's locations behind Plaintiff's back. They also continued to exclude her from budget meetings, which she should have attended as an "Operations Manager."

43. Plaintiff took Defendant BOYIAKIS' management of her locations to be because they did not consider Plaintiff to be competent due to the fact that she was a woman. Defendants did not usurp the job duties and tasks of any male "Operations Manager."

44. Then, in or around December 2014, Pinar Sari was transferred to Fresh & Co.'s 57th Street location, which Plaintiff managed. Plaintiff was not involved in the decision to transfer

Pinar to her store, and Defendants did not heed her objections.

45. Specifically, Plaintiff objected to Pinar Sari's transfer to Plaintiff's location because Plaintiff did not agree with Defendants paying Pinar in cash "off the books." Plaintiff had previously complained about other employees getting paid "off the books," and was consistently ignored.

46. Upon information and belief, Plaintiff's male counterparts had a say in which employees worked at their locations.

47. Then, later that week, Plaintiff DEVITA-CAPRIO was managing Seko Sari's Fresh & Co. location at 57th Street & 7th Avenue with the "Assistant Manager" at that location, Leysi Corea. During that shift, Plaintiff reprimanded one of the "Grill Cooks" for preparing the recipes incorrectly and refusing to take direction.

48. When Seko Sari returned to the location, Jose, a "Grill Cook," called a meeting with Seko and George Tenedios. They invited Leysi Corea into the meeting as well. However, they did not allow Plaintiff DEVITA-CAPRIO to attend the meeting, despite the fact that she was the "Operations Manager" present when the incident occurred.

49. By way of background, Plaintiff had previously asked several times for Jose to be transferred out of that location due to his past with harassing female employees. Nonetheless, Plaintiff's requests were again denied, despite other male "Operations Managers" having a say in who worked at their locations.

50. After the meeting ended, Leysi told Plaintiff that she was coerced into answering questions regarding her relationship with Plaintiff. Specifically, Leysi indicated to Plaintiff that Mr. Tenedios and Seko Sari were trying to coerce Leysi into saying that she and Plaintiff had a romantic relationship outside of work, and that Plaintiff made unwanted advances to an hourly female employee who was a cashier at 57th Street & 7th Avenue Fresh & Co.

location.

51.    Plaintiff was caught off guard and offended for multiple reasons.  One, Plaintiff is not a

lesbian.  Two, Plaintiff's relationship with Leysi was wholly professional and platonic, and

she never made any sexual or romantic advances on Leysi or any other female employee.

52.    Thus, Plaintiff confronted Seko about the meeting.  However, Seko denied what Leysi had

told Plaintiff.  Seko later told Plaintiff that Mr. Tenedios had instructed Seko not to mention

the meeting to Plaintiff.

53.    Thus, Plaintiff DEVITA-CAPRIO called Mr. Tenedios and requested a meeting with him.

Plaintiff then met with Mr. Tenedious and Mr. Buono, and explained that she did not

appreciate that a meeting was behind held about her.  Mr. Tenedios continued to pin

Plaintiff and Leysi Corea against each other, saying that Leysi was not who Plaintiff

thought she was and that Plaintiff should not trust her.  They also told Plaintiff that Leysi

had lodged a complaint against Plaintiff, all of which wasn't true.

54.    Plaintiff believed they were attempting to coerce her into agreeing with the allegations

against her and make her believe that she had no one to corroborate Plaintiff's complaints

regarding the disparate treatment she was experiencing.

55.    After the meeting, Leysi called Plaintiff, requesting a meeting with Defendant PEREZ to

explain what had happened in the meeting between her, Jose, Seko and Mr. Tenedios.

56.    Although Ms. Grant and Mr. Tenedios had indicated that Defendant PEREZ should be kept

out of the investigation, Leysi nonetheless met with Defendant PEREZ regarding the

allegations against Plaintiff.

57.    After Leysi spoke with Defendant PEREZ, the allegations that Plaintiff was having

personal relationships with female staff members were dropped.

58.    Plaintiff believed Defendant PEREZ had the charges dropped because after realizing

Plaintiff did not believe that Leysi was making the allegations against her, Defendants had no accusations or corroborations on which to proceed.

59. Plaintiff then explained to Defendant PEREZ that she was not comfortable working with Seko after his accusations against her. However, Defendant PEREZ forced Plaintiff to work with Seko, informing Plaintiff that if she refused to work with Seko, she would no longer be able to work with Defendants. Despite the fact that the allegations against Plaintiff had been dropped due to their falsity, Seko was not disciplined for making false allegations and coercing Leysi's statements against Plaintiff, and Plaintiff was forced to work with her accuser. Plaintiff understood this to be another way in which Defendants treated her differently because of her gender.

60. After the false allegations that Plaintiff had romantically pursued Leysi, Defendants branded Plaintiff as a lesbian. Defendants had failed to keep their investigation into the allegations private. When Plaintiff asked Mr. Tenedios why the investigation was being conducted in the store locations, and not at the office, Mr. Tenedios replied that he "didn't have time" to call all the employees to the office. As such, Plaintiff became aware of rumors that she was a lesbian.

61. Additionally, in the winter of 2015, Plaintiff DEVITA-CAPRIO was forced to go into work during a snow storm when driving conditions were dangerous. Suffolk county, in which Plaintiff resided, had a state of emergency, yet Defendants demanded that Plaintiff drive to Queens to pick up another employee, Andy, and drive him into Manhattan to work. The only other "Operations Managers" that had to work during the storm were those that lived very close to, or in, Manhattan.

62. Plaintiff was forced to have employees and managers go into work in the snow storm in order to open various Fresh & Co. locations. When Plaintiff drove employees and

managers home due to subway and public transportation cancellations, Plaintiff was reprimanded. However, the other male "Operations Managers" drove employees home, but were not reprimanded.

63. Throughout March and April 2015, Ms. Grant would sit Plaintiff down and ask her why she was "so angry all the time," and tell Plaintiff she needed therapy for her "anger issues." Where Plaintiff was not angry all the time and did not have anger issues, Ms. Grant's questions upset Plaintiff.

64. Plaintiff was further upset by Ms. Grant because Ms. Grant continued to ask Plaintiff personal questions and to talk about the investigation that had occurred a couple months prior. Ms. Grant also continued to tell Plaintiff that she could not question her male counterparts' and superiors' actions or else she would be fired. Plaintiff understood Ms. Grant's questioning to be an attempt to force Plaintiff to quit.

65. Then, in or around April 6, 2015, Defendants terminated Plaintiff DEVITA-CAPRIO's employment. At the time of her termination, Defendant PEREZ and Ms. Grant issued Plaintiff a write-up for a prior incident in which Plaintiff allegedly put her hands on an employee. However, at the time of the incident, no issue was raised and no write-up was given to Plaintiff about the alleged incident.

66. Defendants also cited the investigation into Plaintiff's alleged relationship with Leysi Corea as a reason for her termination, despite the fact that the accusations had been dropped.

67. Lastly, Defendants accused Plaintiff DEVITA-CAPRIO of stealing money from the Fresh & Co. 57th Street and 7th Avenue location. However, Plaintiff had never stolen money from Defendants.

68. Defendants' stated reasons for Plaintiff's termination were pretextual. Defendants

terminated Plaintiff DEVITA-CAPRIO's employment solely on the basis of her gender and in retaliation for her complaining about general discrimination and disparate treatment by Defendants.

69. Plaintiff feels offended, disturbed, and humiliated by the blatantly unlawful discrimination.

70. The above are just some of the acts of harassment and discrimination that Plaintiff experienced on a regular and continual basis while employed by Defendants.

71. Defendants treated Plaintiff differently solely due to her gender.

72. But for the fact that Plaintiff is a female, Defendants would not have treated her differently and would not have terminated her employment.

73. Defendants' actions and conduct were intentional and intended to harm Plaintiff.

74. Plaintiff has been unlawfully discriminated against, retaliated against, humiliated, degraded and belittled, and as a result, suffer loss of rights, emotional distress, and physical injury.

75. Plaintiff's performance was, upon information and belief, above average during the course of her employment with Defendants.

76. As a result of Defendants' misconduct, Plaintiff has suffered, and will continue to suffer loss of income, loss of salary, bonuses, benefits and other compensation which such employment entails.

77. As a result of the acts and conduct complained of herein, Plaintiff has suffered emotional and physical pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses.

78. As a result of Defendants' actions, Plaintiff feels extremely humiliated, degraded, victimized, embarrassed, and emotionally distressed.

79. As a result of the above, Plaintiff has been damaged in an amount which exceeds the

jurisdictional limits of the Court.

80.    Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law.   As such, Plaintiff demands Punitive Damages as against all Defendants, jointly and severally.

## AS A FIRST CAUSE OF ACTION
## FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Individual Defendants)

81.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

82.  This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq.*, for relief based upon the unlawful employment practices of the above-named Defendant.   Plaintiff complains of Defendant's violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender.

83.  Defendants engaged in unlawful employment practices prohibited by 42 U.S.C. §2000e *et seq.*, by discriminating against Plaintiff because of her gender.

## SECOND CAUSE OF ACTION
## FOR RETALIATION UNDER TITLE VII
### (Not Against Individual Defendants)

84.  Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

85.  Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any

manner in an investigation, proceeding, or hearing under this subchapter."

86. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendants

## AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

87. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

88. The New York City Administrative Code §8-107(1) provides that "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, gender, disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

89. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against Plaintiff because of her gender.

## AS A FOURTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

90. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

91. The New York City Administrative Code §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

92. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory and unlawful conduct.

## FIFTH CAUSE OF ACTION FOR RETALIATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

93. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

94. The New York City Administrative Code §8-107(7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

95. Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code §8-107(7) by discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

## SIXTH CAUSE OF ACTION
## FOR DISCRIMINATION UNDER STATE LAW

96. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

97. Executive Law § 296 provides that   "1. It shall be an unlawful discriminatory practice: "(a) For an employer or licensing agency, because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

98. Defendants violated the section cited herein as set forth.

16

## SEVENTH CAUSE OF ACTION
## FOR RETALIATION UNDER STATE LAW

99. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

100. New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

101. Defendants violated the section cited herein as set forth.

## JURY DEMAND

102.      Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff respectfully requests a judgment against Defendants:

A. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.,* and the New York City Administrative Code §8-107 *et. seq.*, in that Defendants discriminated against, terminated and Retaliated Against on the basis of her gender;

B. Awarding damages to Plaintiff for all lost wages and benefits resulting from Defendants' unlawful discrimination and retaliation, and to otherwise make her whole for any losses suffered as a result of Defendants' unlawful employment practices;

C. Awarding Plaintiff compensatory damages for mental, emotional and physical injury, distress, pain and suffering and injury to their reputation in an amount to be proven;

D. Awarding Plaintiff punitive damages;

E. Awarding Plaintiff attorneys' fees, costs, and expenses incurred in the prosecution of the

action; and

F.   Awarding Plaintiff such other and further relief as the Court may deem equitable, just and

proper to remedy Defendants' unlawful employment practices.

Dated:   New York, New York
         June 2, 2016

**PHILLIPS & ASSOCIATES,
ATTORNEYS AT LAW, PLLC**


Marjorie Mesidor, Esq.
Brittany A. Stevens, Esq.
*Attorneys for Plaintiff*
45 Broadway, Suite 620
New York, New York 10006
(212) 248-7431
mmesidor@tpglaws.com
bstevens@tpglaws.com

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION ("EEOC")

### DISMISSAL AND NOTICE OF RIGHTS

| | |
|---|---|
| To: **Christine Devita-Caprio**<br>**197 Cassa Loop**<br>**Holtsville, NY 11742** | From: **New York District Office**<br>**33 Whitehall Street – 5th Floor**<br>**New York, NY 10004** |

☐ *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

RECEIVED APR 1 2 2016

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **520-2016-01188** | **Patrick Sanford, Federal Investigator** | **(212) 336-3677** |

### THE EEOC IS CLOSING ITS INVESTIGATION OF THIS CHARGE OF DISCRIMINATION ("CHARGE") FOR THE FOLLOWING REASON:

☐ The facts alleged in this Charge fail to state a claim under any of the statutes enforced by the EEOC.

☐ The allegations contained in this Charge did not involve a disability as defined by the Americans With Disabilities Act.

☐ The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐ Your Charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your Charge with the Commission.

☒ The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the Respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this Charge.

☐ The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this Charge.

☐ Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your Right to Sue that we will send you. You may file a lawsuit against the Respondent(s) under federal law based on this Charge in federal or state court. Your lawsuit must be filed **WITHIN 90 DAYS** of your receipt of this notice; or your Right to Sue based on this Charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Kevin J. Berry*

**Kevin J. Berry,**
**District Director**

APR 0 8 2016
APR 0 8 2016
*(Date Mailed)*

Enclosures(s)

cc:

**Respondent:**
**St. Management Group, Inc. – d.b.a. Fresh Company**
**Attn: Human Resources Director**
**22 E. 41st Street – Suite 401**
**New York, NY 10017**

**Charging Party's Attorney:**
**Phillips & Associates**
**Attn: Marjorie Mesidor, Esq.**
**45 Broadway – Suite 620**
**New York, NY 10006**
**(212) 248-7431**